# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| WENDI C. M., ) | |
| ) | |
|       *Plaintiff* ) | |
| ) | |
| v. ) | No. 1:18-cv-00332-JHR |
| ) | |
| ANDREW M. SAUL, ) | |
| **Commissioner of Social Security,**[1] ) | |
| ) | |
|       *Defendant* ) | |

## *MEMORANDUM DECISION*[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in evaluating whether her mental impairments met or equaled one of the so-called "Listings," Appendix 1 to 20 C.F.R. Part 404, Subpart P, and in assessing both her physical and mental residual functional capacity ("RFC"). *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 1-20. I agree that the ALJ erred in determining the plaintiff's mental RFC and, on that basis, vacate the commissioner's decision and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 20.

remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, Finding 1, Record at 17; that she had the severe impairments of status post left knee surgery, bipolar disorder, borderline personality disorder, and somatic symptom disorder, Finding 3, *id*.; that she had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that she could occasionally stoop, crawl, kneel, crouch, and climb ramps or stairs, could never climb ladders, ropes, or scaffolds, needed to avoid concentrated exposure to vibration, could perform simple routine tasks for two-hour blocks of time but could not understand, remember, or carry out detailed instructions, and was limited to occasional decision-making, occasional workplace changes, and only occasional interaction with the public, Finding 5, *id*. at 20; that, considering her age (42 years old, defined as a younger individual, on her alleged disability onset date, January 8, 2016), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 24; and that she, therefore, had not been disabled from January 8, 2016, her alleged onset date of disability, through the date of the decision, November 17, 2017, Finding 11, *id*. at 25-26. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff argues that, in two respects, the ALJ's determination that she was limited to occasional public contact is unsupported by substantial evidence, warranting remand. First, she contends that, as in *Staples v. Berryhill* ("*Lisa Staples*"), No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017), that limitation is neither supported by expert opinion nor a matter of common-sense judgment. *See* Statement of Errors at 5-6; *Lisa Staples*, 2017 WL 1011426, at *4 (mental RFC determination that was neither supported by expert opinion nor the product of a common-sense judgment was unsupported by substantial evidence).

Second, she asserts that, as in *Staples v. Colvin* ("*Donald Staples II*"), No. 2:15-cv-392-DBH, 2016 WL 4146083 (D. Me. Aug. 3, 2016) (rec. dec., *aff'd* Oct. 6, 2016), there is no apparent connection between that limitation and any particular evidence of record. *See* Statement of Errors

3

at 16-17; *Donald Staples II*, 2016 WL 4146083, at *5 ("[W]hen a claimant raises the issue, the connection between a functional limitation included in an RFC and some particular evidence in the record must be apparent. . . . The absence of such a connection demonstrates that the [ALJ] drew a conclusion that either was without support in the evidence or was beyond his capacity as a lay person to draw and, therefore, would also make it necessary to remand this case[.]").

The commissioner counters that, in this case, unlike in *Lisa Staples* or *Donald Staples II*, the ALJ adequately explained the derivation of his mental RFC determination, clarifying that he relied on the opinions of agency nonexamining consultants Brian Stahl, Ph.D., and Carlos Jusino-Berrios, M.D., as well as generally routine mental status examinations and the plaintiff's activities of daily living. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 18) at 4-6, 13-15.

The plaintiff has the better argument.

As the plaintiff suggests, *see* Statement of Errors at 6, the ALJ's mental RFC determination deviates in one significant respect from the assessment of Dr. Jusino-Berrios. Whereas Dr. Jusino-Berrios found no limitations in social interaction, the ALJ assessed a limitation to "only occasional interaction with the public." *Compare* Finding 5, Record at 20 *with id*. at 178.

In so doing, the ALJ did not simply give the plaintiff the benefit of the doubt. To the contrary, he indicated that evidence unseen by Dr. Stahl, who found no severe mental impairment, *see id*. at 141, and Dr. Jusino-Berrios, who assessed limitations attributed to "depression sequelae of a physical condition[,]" *id*. at 178, warranted greater restrictions than either consultant had assessed, *id*. at 23 (giving "some weight" to the Stahl and Jusino-Berrios opinions but explaining that, "giving maximum deference to the allegations of the [plaintiff], within the parameters of the evidence, the evidence reasonably supported greater restrictions").

4

That evidence included a 2017 report by examining consultant Debora Elliott Ward, Ph.D., which postdated the 2016 opinions of Drs. Stahl and Jusino-Berrios. *See id*. at 140-41 (Stahl assessment dated April 19, 2016), 173-79 (Jusino-Berrios assessment dated October 4, 2016), 1418-21 (Ward assessment dated February 2, 2017). Whereas Dr. Stahl found nonsevere anxiety and depression, *see id*. at 140-41, and Dr. Jusino-Berrios assessed a limitation to simple work to accommodate "depression sequelae of a physical condition[,]" *id*. at 174, Dr. Ward concluded, based on testing and clinical interview results, that the plaintiff had borderline personality disorder, unspecified bipolar and related disorder, and somatic symptom disorder, *see id*. at 1419-20.

The ALJ deemed all three mental impairments diagnosed by Dr. Ward severe. *See* Finding 3, *id*. at 17. He observed that, while treating providers had noted no behavioral issues or described the plaintiff as cooperative, and Dr. Ward had described her "as appropriately dressed, personable and interactive throughout the interview[,]" "[n]evertheless, mood fluctuations, including, at times, irritability and anger[,] remained [treating providers'] central focus[,]" and "Dr. Ward found enough evidence to support a borderline personality disorder and somatic dysfunction." *Id*. at 19 (citations omitted). He explained that, "[a]s such, in light of the consistency of mood fluctuations, I limited the [plaintiff] to occasional interaction with the public[.]" *Id*.

However, as the plaintiff's counsel persuasively contended at oral argument, the ALJ did not explain how that limitation adequately addressed his client's acknowledged mood fluctuations; for example, mood fluctuations that might occur during periods of occasional interaction with the public or unlimited periods of interaction with coworkers and supervisors. *See also* Statement of Errors at 8, 16.

Nor did the ALJ's reliance on largely normal mental status examinations and activities of daily living fill the gap. The ALJ identified a need for restrictions accommodating mood

5

fluctuations *despite* results of mental status examinations, noting that, while "[l]ongitudinal mental status examinations . . . reflected no significant gross deficits in function cognitively or behaviorally[,] . . . [t]he mental health evidence supports mood fluctuations and somatic issues, which I can reasonably find supportive of some limitations[.]" Record at 22.

And, while the ALJ catalogued a number of the plaintiff's activities of daily living, including "the ability to use public transportation, shop in stores, and play pool with her boyfriend," Opposition at 14; *see also* Record at 22-23, he did not explain, and it is not self-evident, how those activities support a workplace restriction to only occasional interaction with the public, but no greater restriction in degree or kind of social interaction. *See* Record at 22-23.

The ALJ, hence, did not make a permissible common-sense judgment, as a layperson, of the plaintiff's mental RFC. That, in turn, undermined his reliance at Step 5 on the testimony of a vocational expert that a person with the stated RFC could perform work existing in significant numbers in the national economy. *See* Record at 25; s*ee also, e.g.*, *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **VACATED**, and the case is **REMANDED** for proceedings consistent herewith.


Dated this 8th day of September, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge